UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
SEAN MARCELLIN,

        Plaintiff,

  -against-

CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, (former) POLICE OFFICER
JAMES DEVANE, Tax ID 955875 (currently with FDNY),
SERGEANT HARRISON BERKOWITZ, Tax ID 941417,
POLICE OFFICER MICHAEL MERCURIO, Tax ID 954130,
POLICE OFFICER JOSEPH FOSS, Tax ID 950434,
SERGEANT REBECCA MARCUS, Tax ID 938936,
POLICE OFFICER STEPHEN DEMPSEY, Tax ID 943156,
POLICE OFFICER DOMINICK FARESE, Tax ID 956632,
POLICE OFFICER RAWLE PERSAD, Tax ID 951047,
POLICE OFFICER LOUIS CAMERADA, Tax ID 950143,
POLICE OFFICER AKIRA CORBIN, Tax ID 958433
OF THE 101st PRECINCT,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**AMENDED COMPLAINT**

(Jury Trial Demanded)

   Plaintiff SEAN MARCELLIN, by his attorney Rochelle S. Berliner, Esq., for his complaint, alleges as follows:

**INTRODUCTION**

   1. Plaintiff SEAN MARCELLIN brings this action, pursuant to 42 U.S.C. § 1983, to redress the deprivation of his federal constitutional rights. More specifically, on or about January 11, 2018, at approximately 3:40 p.m. in Far Rockaway, Queens County, New York, Defendant Police Officer James Devane ("Defendant Devane") and Defendant Sergeant Harrison Berkowitz ("Defendant Berkowitz"), and Defendant Police Officer Michael Mercurio ("Defendant Mercurio"), and Defendant Police Officer Joseph Foss ("Defendant Foss"), and Defendant Sergeant Rebecca Marcus ("Defendant Marcus"), and Defendant Police Officer

-1-

Stephen Dempsey ("Defendant Dempsey"), and Defendant Dominick Farese ("Defendant Farese"), and Defendant Rawle Persad ("Defendant Persad"), and Defendant Louis Camerada ("Defendant Camerada"), and Defendant Akira Corbin ("Defendant Corbin") (collectively "Defendant Police Officers," individually "Defendant Sergeant/Police Officer"), each of whom was a member of the New York City Police Department ("NYPD"), 101st Precinct, engaged in the false arrest, unlawful imprisonment, excessive force, and other constitutional violations against Plaintiff.

2. Sean Marcellin brings suit to redress these aspects of the violation of his federal and state constitutional rights.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §§ 1331 and 1343, jurisdiction is proper as the claims of Plaintiff arise under Federal law. Pursuant to 28 U.S.C. § 1367, jurisdiction is proper as the claims of Plaintiff arise under the common law of the State of New York.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because the events forming the basis of Plaintiff's Complaint occurred in that District.

## PARTIES

5. Mr. Marcellin is a citizen of the United States. He resides in the State of New York, Queens County.

6. Defendant Devane was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

7. Upon information and belief, Defendant Devane is presently a member of the FDNY. At all times relevant herein, however, he was acting within the scope of his employment with the NYPD and under color of law.

8. Defendant Berkowitz was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

9. Upon information and belief, Defendant Berkowitz is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

10. Defendant Mercurio was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

11. Upon information and belief, Defendant Mercurio is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

12. Defendant Foss was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

13. Upon information and belief, Defendant Foss is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

14. Defendant Marcus was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, she was assigned to the 101st Precinct.

15. Upon information and belief, Defendant Marcus is still a member of the NYPD. At all times relevant herein, she was acting within the scope of his employment and under color of law.

16. Defendant Dempsey was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

17. Upon information and belief, Defendant Dempsey is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

18. Defendant Farese was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

19. Upon information and belief, Defendant Farese is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

20. Defendant Persad was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

21. Upon information and belief, Defendant Persad is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

22. Defendant Camerada was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, he was assigned to the 101st Precinct.

23. Upon information and belief, Defendant Camerada is still a member of the NYPD. At all times relevant herein, he was acting within the scope of his employment and under color of law.

24. Defendant Corbin was, at all times relevant herein, a member of the NYPD. Upon information and belief, at all times relevant herein, she was assigned to the 101st Precinct.

25. Upon information and belief, Defendant Corbin is still a member of the NYPD. At all times relevant herein, he was acting within the scope of her employment and under color of law.

26. Defendant City of New York ("Defendant City") is a municipal corporation organized pursuant to the laws of the State of New York. It has all the powers vested in it by the laws of the State of New York, the City of New York and the Charter of the City of New York. At all times relevant herein, it was the employer of the individually named defendants.

## ADMINISTRATIVE PREREQUISITES

27. On or about early April, 2018, Plaintiff Sean Marcellin filed a timely Notice of Claim with Defendant City in the Office of the City Comptroller, in accordance with the General Municipal Law, concerning his January 11, 2018, arrest.

28. At least thirty days have elapsed since Plaintiff filed the Notice of Claim and adjustment or payment thereof has been neglected or refused. This action is commenced within one year and 90 days from the date of the occurrences alleged herein, as required under Section 50-i of the General Municipal Law.

29. A 50-H hearing was not held in this case. A hearing was scheduled for June 5, 2018, at Jane Barrett and Associates, LLC in Brooklyn, New York. Since Plaintiff's criminal case was still pending, Plaintiff's counsel faxed a letter to said firm indicating that Plaintiff would not be available to give sworn testimony on June 5, 2018. Plaintiff received acknowledgment of that letter. Defendant City failed to schedule a new hearing date and, therefore, no 50-H hearing was conducted. Plaintiff considers Defendant City to have waived a 50-H hearing.

## FACTS UNDERLYING THE COMPLAINT

30. On or about January 11, 2018, at approximately 3:40 p.m., Mr. Marcellin, an employee of Enterprise Rent-A-Car, was driving one of their rental cars on Pinson Street on his

way to Empire Car Wash on Beach Channel Drive in Far Rockaway, Queens County, pursuant to a request by his manager.

31. When Mr. Marcellin got to the corner of Pinson Street and Dix Avenue, he signaled to turn left onto Dix Avenue. He made certain to signal because at the intersection, Mr. Marcellin noticed a black Impala, which he knew to be an unmarked police car, driving on Dix Avenue heading toward Beach Channel Drive.

32. As the police car passed through the intersection of Dix Avenue and Pinson Street, Mr. Marcellin noticed that the officers in the Impala, who, upon information and belief turned out to be Defendants Berkowitz, Devane and Mercurio, were staring at him as he waited at the stop sign for them to pass.

33. Once the police car passed through the intersection, Mr. Marcellin turned left onto Dix Avenue and then signaled and made a right turn on the next block which was Beach Channel Drive.

34. Mr. Marcellin then noticed that the police car, which had been going straight across Beach Channel Drive, made an abrupt U-turn, crossed in front of Mr. Marcellin's car and pulled over near a lot where a supermarket was under construction.

35. Mr. Marcellin passed the police car and signaled to turn left into the car wash. The Police car then made a U-turn and stopped behind Mr. Marcellin's car which was in the car wash driveway.

36. As Mr. Marcellin pulled into the car wash and saw the police car behind him, he saw a passer-by and stated to him, through his open window, in sum and substance, that the police were pulling him over and were going to harass him "because I'm black." The bystander began recording the incident that followed and is described herein.

37. Upon information and belief, Defendant Berkowitz aggressively approached Mr. Marcellin's driver side window, slammed his hands angrily on the door, and demanded in sum and substance, "Give me your fucking license right now."

38. Mr. Marcellin went through his wallet, but he could not find his license right away, explaining in sum and substance, "I have a license. I can't find it. I work for Enterprise. I have to have a license to work for Enterprise," and then proceeded to give the police officer his learner's permit instead because it was the only one he could find quickly.

39. Mr. Marcellin repeatedly asked the police officers why they had pulled him over and when one of them replied that he had not signaled at a turn, Mr. Marcellin repeatedly insisted that he had signaled and that the police officers were harassing him.

40. Upon information and belief, Defendant Devane, who was also standing by Mr. Marcellin's car, opened the car door and stated, in sum and substance, "Make another move and I will break your fucking face."

41. Mr. Marcellin responded in kind.

42. Angry words were exchanged between Mr. Marcellin and Defendant Berkowitz, Devane and Mercurio when Defendant Berkowitz put a taser up to Mr. Marcellin's face and threatened to tase him.

43. Upon information and belief, Defendant Berkowitz told the bystander who was recording the incident, and in fact, stated into the camera, that Mr. Marcellin is "now gonna get locked up or he'll get a summons depending on my mood."

44. At one point during the encounter, Mr. Marcellin called out to Defendants Persad and Corbin, who arrived at the scene in uniform and stated, in sum and substance, "Brother,

you're brown, sister you're black, he is saying that he is going to break my face and you're not doing anything!"

45. Mr. Marcellin knew Defendants Persad and Corbin from the neighborhood and they knew him, and they knew that he worked for Enterprise and was not a criminal.

46. Despite knowing Mr. Marcellin, Defendants Persad and Corbin neither responded nor intervened to diffuse the situation.

47. Several additional Defendants arrived at the scene.

48. Angry and threatening words continued to be exchanged and eventually, Mr. Marcellin yelled out in sum and substance, "What's your name? I'll find out where you live right now and I'll fuck your kids up."

49. At that time, Mr. Marcellin did not know any of the officers and did not know if any of them have children.

50. Defendant Devane and other Defendants yanked Mr. Marcellin out of the car.

51. Defendant Berkowitz tased Mr. Marcellin in the chest and continued tasing him well after Mr. Marcellin had put his hands behind his back.

52. At no time did Mr. Marcellin resist the police.

53. Mr. Marcellin fell to the ground after being tased a second time.

54. Defendant Berkowitz continued to tase Mr. Marcellin on the leg several times.

55. Defendants Devane, Mercurio, Foss, Marcus, Dempsey, Farese and Camerada kicked Mr. Marcellin in the head and mouth, stomped on his hands and punched him in the head, ribs and throughout his body as he lay on the ground.

56. During this assault, Mr. Marcellin's shoe came off and his pants were pulled down below his knees in full public view.

57.     Mr. Marcellin was handcuffed while on the ground.

58.     When Mr. Marcellin was being placed inside the police car, Defendant Devane said, "Get into the cage, you fucking animal."

59.     Mr. Marcellin was placed in a police car with Defendants Persad and Corbin and he asked them to get his inhaler for his asthma.

60.     In response, Defendant Corbin asked Defendant Persad, in sum and substance, if they should get Mr. Marcellin's inhaler.

61.     Defendant Persad replied that they would not get the inhaler and that they would just bring him to the precinct.

62.     When Mr. Marcellin arrived at the 101st Precinct, his shoe was still missing, and there was mud on his pants, underwear, and feet.

63.     Mr. Marcellin was crying and his mouth was bleeding.

64.     Defendant Devane and approximately three other Defendants searched Mr. Marcellin inside the cell area near the fingerprint machine by demanding he take off his clothes.

65.     Defendant Devane then placed his hands inside Mr. Marcellin's underwear, grabbing him near his genitals.

66.     Defendant Devane and other Defendants then placed Mr. Marcellin back inside the cell wearing only his underwear.

67.     During the next approximately three hours, Mr. Marcellin repeatedly asked Defendant Devane and other Defendants for his asthma inhaler, an ambulance, or medical attention.

68.     Defendant Devane and other Defendant Police Officers disregarded his requests and gave him an ice pack.

69. Defendant Devane demanded that Mr. Marcellin tell the person who recorded the incident and broadcast it live on Facebook to take it off social media or else it would take longer for Mr. Marcellin's arrest to be processed.

70. When Mr. Marcellin's family arrived at the precinct, Defendant Devane demanded that someone tell the person who recorded the incident and broadcast it live on Facebook to take it off social media or else it would take longer for Mr. Marcellin's arrest to be processed.

71. Defendant Devane told Mr. Marcellin, in sum and substance, "If this happened on a back block, it would have gone a different way," which Mr. Marcellin understood to mean that the beating would have been worse had the incident occurred on a deserted or back street.

72. During processing of Mr. Marcellin's arrest, Mr. Marcellin found his driver's license and gave it to Defendant Devane.

73. One or more Defendants confiscated Mr. Marcellin's cell phone and when Mr. Marcellin reclaimed it, it had been taken apart and was broken.

74. Mr. Marcellin was also repeatedly interrogated without being given *Miranda* warnings.

75. On or about January 12, 2018, Mr. Marcellin was arraigned in Queens Criminal Court and charged with Making a Terroristic Threat under NYPL 490.20(1), Resisting Arrest under NYPL 205.30, Obstructing Governmental Administration under NYPL 195.05, Illegal Signal under VTL 1163(c), and Driving Without a License under VTL 509.1.

76. Mr. Marcellin was in custody for approximately 18-20 hours until the next day when he was arraigned and released on his own recognizance. That day, Mr. Marcellin went to the emergency room and was treated for head trauma, chest pain, and other injuries.

77. Mr. Marcellin sought and continues to seek psychological care.

78. On or about August 3, 2018, the case was resolved with an Adjournment in Contemplation of Dismissal pursuant to Criminal Procedure Law §170.55

79. Due to the within-mentioned incident, Mr. Marcellin suffered and continues to suffer injury.

80. Mr. Marcellin's injuries include past and continued emotional distress, including anxiety, distrust and fear of police, and past and continued physical injury.

## AS AND FOR A FIRST CAUSE OF ACTION
### (False Arrest and Unlawful Imprisonment under 42 U.S.C. § 1983)

81. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 80, as if fully set forth herein.

82. On January 11, 2018, one or more of the individual defendants placed handcuffs on and detained Plaintiff Sean Marcellin.

83. Defendants did not have probable cause to believe that Plaintiff had committed any crime. Put simply, Plaintiff did not engage in any conduct that warranted his arrest and detention.

84. Because the individual defendants did not have probable cause to believe that Plaintiff had committed a crime, his intentional detention and confinement was unreasonable within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

85. As a result of the individual defendants' conduct on January 11, 2018, Plaintiff was detained on the scene of the incident and at the precinct, and at all times he was aware of his confinement.

86. Plaintiff did not consent to his confinement.

87. As a result of his detention and confinement by the individual defendants, Plaintiff's liberty was restricted for an extended period of time. Plaintiff suffered psychological injury, and continues to suffer psychological injury.

88. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
(Unlawful Search under 42 U.S.C. ' 1983)

89. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 88, as if fully set forth herein.

90. Following the January 11, 2018, beating and tasing incident during which the police had thrown Plaintiff to the ground and Plaintiff's shoe came off and his pants were pulled down below his knees, Defendants searched Plaintiff inside his underwear and near his genitals in a public area of the 101st Precinct.

91. As such, this search was performed in the absence of any individualized reasonable suspicion that Plaintiff was concealing weapons or contraband within his pants or underwear.

92. As a result of the foregoing, Plaintiff was subjected to an illegal and improper strip search.

93. The foregoing unlawful strip search violated Plaintiff's constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

94. As a result of Defendants' conduct, Plaintiff suffered privacy violations, loss of freedom, psychological injury, and continues to suffer psychological injury.

95. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
### (First Amendment Retaliation under 42 U.S.C. § 1983)

96. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 95, as if fully set forth herein.

97. On January 11, 2018, Plaintiff shouted at Defendants and responded to their threats with threats. This "lashing out" speech by Plaintiff in response to Defendants' threats, intimidation, mistreatment and abuse of power is speech obviously protected by the First Amendment, and no reasonably competent police officer would believe this was anything other than that.

98. Apparently, because individual Defendants found Plaintiff's words to be offensive, they retaliated by physically assaulting him, humiliating him, and arresting him for offenses that Plaintiff did not commit.

99. In further retaliation, Defendants tased Plaintiff repeatedly and caused him to be prosecuted on charges which were based on Defendants' knowingly false statements.

100. In so doing, Defendants, under color of state law, deprived Plaintiff of his rights, privileges and immunities secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including but not limited to deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person, including but not limited to false arrest and false imprisonment; (b) freedom from interference with activity protected by the First Amendment; (c) freedom from retaliatory arrest; (d) freedom from retaliatory prosecution; and (e) freedom from abuse of process.

101. As a result of Defendants' conduct, Plaintiff's First Amendment Right to Free Speech was violated. As a result, Plaintiff suffered psychological injury and continues to suffer injury.

102. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Excessive Force under 42 U.S.C. § 1983)

103. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 102, as if fully set forth herein.

104. On January 11, 2018, without posing any sort of immediate threat to the Defendants' safety or the safety of others, Plaintiff was tased, beaten, struck, kicked, pounded and brutalized by several of the Defendants in the absence of any need for said applications of force.

105. The video recording of the incident shows that Plaintiff at no time was actively resisting arrest or attempting to flee.

106. The level of force employed by the Defendants was excessive and unreasonable from the perspective of a reasonable officer at the scene of the incident.

107. The level of force employed by the Defendants was in violation of Plaintiff's constitutional rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

108. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer physical injuries, violation of civil rights, emotional distress, anguish, anxiety,

fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

109. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)

110. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 109 as if fully set forth herein.

111. Defendants had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence by other officers.

112. Defendants observed and therefore, had reason to know that excessive force would be or was being used, and Defendants had both the opportunity and the means to prevent the harm from occurring.

113. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer physical injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

114. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (False Arrest and Unlawful Imprisonment under State Law)

115. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 114, as if fully set forth herein.

116. On January 11, 2018, one or more of the individual Defendants placed handcuffs on and arrested Plaintiff.

117. Defendants did not have probable cause to believe that Plaintiff had committed any crime. Put simply, Plaintiff did not engage in any conduct that warranted his arrest and detention and there was no legal justification for his arrest.

118. As a result of the individual Defendants' conduct on January 11, 2018, Plaintiff was detained on the scene of the incident and at the precinct, and at all times he was aware of his confinement.

119. The confinement of Plaintiff was not otherwise privileged.

120. Plaintiff did not consent to his confinement.

121. As a result of his detention and confinement by the individual defendants, Plaintiff's liberty was restricted for an extended period of time without probable cause. Plaintiff suffered loss of freedom, psychological injury, and continues to suffer psychological injury.

122. The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

123. As the employer of the individual Defendants, Defendant City is responsible for Plaintiff's injuries under the doctrine of *respondeat superior*.

124. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (Assault under State Law)

125. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 124, as if fully set forth herein.

126. By reason of the foregoing actions, the defendants placed Plaintiff in apprehension of imminent harmful and offensive contact, thereby committing an assault on January 11, 2018.

127. As a consequence thereof, Plaintiff has been injured.

128. The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

129. As the employer of the individual Defendants, Defendant City is responsible for the injuries Plaintiff suffered and continues to suffer as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*.

130. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Battery under State Law)

131. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 130, as if fully set forth herein.

132. By reason of the foregoing, the individual Defendants unreasonably tased and physically assaulted Plaintiff, thereby committing a battery on January 11, 2018.

133. As a consequence thereof, Plaintiff has been injured.

134. The individual Defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

135. As the employer of the individual Defendants, Defendant City is responsible for the injuries Plaintiff suffered and continues to suffer as a result of the conduct of the individual Defendants pursuant to the doctrine of *respondeat superior*.

136. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### AS AND FOR A NINTH CAUSE OF ACTION
### (Negligent Supervision under State Law)

137. Plaintiff SEAN MARCELLIN repeats and re-alleges the allegations contained in paragraphs 1 through 136 as if fully set forth herein.

138. Defendants owed a duty to act according to the standard of ordinary care of a police officer.

139. Defendants breached that duty by failing to act as ordinary police officers would.

140. Upon information and belief Defendant City failed to use reasonable care in the training and supervision of the aforesaid Defendants who conducted and participated in the arrest and prosecution of Plaintiff in connection with the January 11, 2018, tasing and beating incident.

141. As a result of the individual Defendants' conduct, Plaintiff Sean Marcellin has been injured.

142. The individual defendants were agents of Defendant City and were at all relevant times acting within the scope of their employment.

143. As the employer of the individual defendants, Defendant City is responsible for the injuries Plaintiff suffered, and continues to suffer, as a result of the conduct of the individual defendants pursuant to the doctrine of *respondeat superior*.

144. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## DEMAND FOR A JURY TRIAL

145.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, SEAN MARCELLIN prays for the following relief:

(a)   compensatory damages in an amount to be determined at trial, but no less than $100,000;

(b)   punitive damages in an amount to be determined at trial;

(c)   reasonable attorneys' fees;

(d)   costs and expenses; and

(e)   such other and further relief as is just and proper.

Dated: Queens, New York
       November 29, 2019

ROCHELLE S. BERLINER, ESQ.
Attorney for Plaintiff
118-21 Queens Boulevard, Suite 504
Forest Hills, New York 11375
(718) 261-5600

By:   _____/s/_____

Rochelle S. Berliner (RB 7463)